UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION<br><br>                    Plaintiff,<br><br>-against-<br><br>BANK OF AMERICA, N.A., and BARCLAYS CAPITAL REAL ESTATE INC.,<br><br>                    Defendants. | No. 1:12-cv-04873 (CM)(GG) |

**MEMORANDUM OF LAW IN SUPPPORT OF
BARCLAYS' MOTION TO DISMISS U.S. BANK'S AMENDED COMPLAINT
PURSUANT TO RULE 12(B)(6)**

BOIES, SCHILLER & FLEXNER LLP
Jonathan D. Schiller
Camille Oberkampf
575 Lexington Avenue
New York, New York 10022
Phone: 212-446-2300
Fax: 212-446-2350

Jonathan M. Shaw (admitted *pro hac vice*)
5301 Wisconsin Avenue, N.W.
Washington, DC 20015
Phone: 202-237-2727
Fax: 202-237-6131

*Attorneys for Defendant Barclays Capital Real Estate Inc.*

**TABLE OF CONTENTS**

STATEMENT OF THE CASE ................................................................................................1

STATEMENT OF FACTS.....................................................................................................2

ARGUMENT..........................................................................................................................4

    I.    BARCLAYS SATISFIED ITS OBLIGATION UNDER § 4(B) OF THE MLPA TO ASSIGN ITS INTEREST IN THE LETTER OF CREDIT...................................................4

    a.    The Parties to the MLPA Agreed That Barclays Was Required to Assign Its Interest in Letter-of-Credit Proceeds, But Never Agreed That Barclays Was Required to Transfer any Letters of Credit Without Instruction. ..............................................................4

    b.    As Agreed, Barclays Completed a Legally Valid Assignment of Its Interest in the Letter of Credit. ......................................................................................................................8

    II.    BARCLAYS SATISFIED ITS OBLIGATION UNDER § 2(C) OF THE MLPA TO DELIVER THE LETTER OF CREDIT TO U.S. BANK. ...................................................9

    III.    THE AMENDED COMPLAINT FAILS TO ALLEGE THAT BARCLAYS' ACTS OR OMISSIONS, AS OPPOSED TO U.S. BANK'S OWN FAILURES, DAMAGED U.S. BANK................................................................................................... 13

CONCLUSION..................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, AS.*, 748 F.Supp. 177 (S.D.N.Y.1990) .................................................................................... 6

*Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F. Supp. 2d 398 (S.D.N.Y. 2010) ........ 7

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991). ................................. 2, 3

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42 (2d Cir. 2011) .................. 12

*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562 (2002) .................................................... 4

*Int'l Fid. Ins. Co. v. County of Rockland*, 98 F. Supp 2d 400 (S.D.N.Y. 2000) ......................... 7

*MSF Holding Ltd. v. Fid. Trust Co. Int'l.*, 435 F. Supp. 2d 285 (S.D.N.Y. 2006) ...................... 6

*Porky Prods., Inc. v. Nippon Express U.S.A. (Ill.), Inc.*, 1 F. Supp. 2d 227 (S.D.N.Y. 1997) ........................................................................................................................................ 4

*Suffolk Bus. Ctr., Inc. v. Applied Digital Data Sys., Inc.*, 78 N.Y.2d 383 (1991). ...................... 7

**Statutes**

N.Y. U.C.C. § 5-112(b) (McKinney 2012) ............................................................................. 8

N.Y. U.C.C. § 5-114(b) (McKinney 2012) ............................................................................. 9

N.Y. U.C.C. § 5-114(c) (McKinney 2012) ............................................................................. 9

N.Y. U.C.C. § 5-116(c) (McKinney 2012) ............................................................................. 9

**Treatises**

John F. Dolan, *The Law of Letters of Credit* § 10.01 (rev. ed. 2003) ...................................... 6

**STATEMENT OF THE CASE**

This case arises from the failure of a trustee of a mortgage loan trust to draw on a letter of credit securing one of the trust's loans before the letter of credit expired. The purchase agreement under which the trustee received the letter of credit required the seller of the loan (i) to assign to the purchaser the seller's interest in receiving proceeds drawn under the letter of credit, (ii) to deliver the letter of credit to the trustee, and (iii) to take any further actions that the trustee reasonably requested. The seller duly complied with the first two requirements by executing a general assignment in favor of the purchaser and delivering the letter of credit to the trustee, but the seller received no transfer instruction from the trustee after the trustee had acknowledged possession of the file containing the letter of credit. The trustee knew that the letter of credit originally had an expiration date of May 1, 2007. The trustee also knew that the letter of credit's issuer was not required to extend the deadline. And, the trustee knew that in order to receive the issuer's notice of a decision not to extend the deadline, the issuer would first have to receive a completed beneficiary-substitution form. Notwithstanding this knowledge, the trustee never drew on the letter of credit. Nor did the trustee request that the seller transfer the letter of credit rather than merely assign the seller's interest in receiving proceeds. Thus, the trustee allowed the letter of credit to expire, and now seeks in this action to recover against the seller for the trustee's own failures.

Plaintiff U.S. Bank National Association ("U.S. Bank"), as trustee for the registered holders of certain commercial mortgage pass-through certificates, alleges that Defendant Barclays Capital Real Estate Inc. ("Barclays") (the seller) breached two provisions of an agreement between Barclays and Banc of America Commercial Mortgage Inc. ("BACM") (the purchaser), namely, the Mortgage Loan Purchase and Sale Agreement dated June 22, 2006 (the

1

"MLPA"). In particular, U.S. Bank alleges that Barclays breached the MLPA by failing to submit paperwork to transfer a letter of credit partially securing a loan that Barclays sold per the MLPA. As a result, U.S. Bank alleges that the letter of credit's issuer, Defendant Bank of America, N.A., was not formally notified of a change in beneficiary, and that U.S. Bank later did not receive notice of Bank of America's decision not to extend the letter of credit. Under the relevant agreements, however, Barclays was merely obligated to *assign* its interest in proceeds of any letters of credit, to deliver any letters of credit to the purchaser or U.S. Bank, and to submit other documents as the purchaser or U.S. Bank might reasonably request. Accordingly, Barclays did not breach the MLPA, and the breach-of-contract claim against it should be dismissed.

## STATEMENT OF FACTS[1]

In 2006, Barclays sold a portfolio of loans to BACM pursuant to the MLPA. (Am. Compl. ¶ 11.) A true and correct copy of the MLPA is attached as Exhibit A to the Declaration of Camille Oberkampf, Esq., dated October 4, 2012 ("Oberkampf Declaration").[2] In a separate agreement to which Barclays was not a party — the Pooling and Service Agreement (the "PSA") — BACM signed over its interest in those loans to a trust, the trustee of which was U.S. Bank's predecessor LaSalle Bank. (Am. Compl. ¶ 12.) Relevant excerpts from the lengthy PSA are attached as Exhibit B to the Oberkampf Declaration. Section 3.02(b)(ii) of the PSA obligated Bank of America in its capacity as Master Servicer, within 60 days of the Closing Date, to "notify each provider of a Letter of Credit for any Serviced Loan" of the new "beneficiary under each such Letter of Credit." (Am. Compl. ¶ 24.)

---

[1] Barclays assumes the truth of the Amended Complaint's allegations solely for the purpose of this motion to dismiss.

[2] This Court may properly consider the cited contractual documents without converting this dismissal motion into a motion for summary judgment, as these documents are "integral" to the Amended Complaint. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

2

One of the loans in that portfolio — made to THI IV PBG LLC and THI IV PBG Lessee LLC — was secured in part by a $1.25 million letter of credit. (Am. Compl. ¶ 9.) A true and correct copy of the letter of credit is attached as Exhibit C to the Oberkampf Declaration. Barclays assigned the letter of credit to the purchaser or its designee as required by the MLPA when it executed and delivered to the trustee an omnibus assignment (the "General Assignment") of all interests relating to the "loan . . . made to THI IV PBG LLC, a Delaware limited liability company and THI IV PBG Lessee LLC, a Delaware limited liability company." A true and correct copy of the General Assignment is attached as Exhibit D to the Oberkampf Declaration. Per the General Assignment, Barclays "assign[ed] . . . all right, title and interest of Assignor in and to the agreements, certificates and documents listed below." That list of documents included "[a]ll other documents and instruments relating to . . . the Loan," which encompasses the letter of credit. The original letter of credit was delivered by Barclays to LaSalle Bank, U.S. Bank's predecessor, on April 25, 2006. A true and correct copy of the letter attaching the mortgage file is attached as Exhibit E to the Oberkampf Declaration, and a true and correct copy of LaSalle Bank's letter confirming its receipt and review of the mortgage file is attached as Exhibit F to the Oberkampf Declaration.[3]

---

[3] As U.S. Bank's predecessor sent this notice, it may also be considered on a motion to dismiss. *See Cortec Indus.*, 949 F.2d at 48 ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

3

## ARGUMENT

U.S. Bank asserts that under New York law,[4] Barclays breached two different provisions of the MLPA. This assertion rests on inaccurate paraphrases of the contractual terms and improper conflation of the term "assignment" with the term "transfer" — two terms that the MLPA, this Court's prior cases, letter of credit law, and even the Amended Complaint recognize have materially distinct meanings. This Court can, and should, decide this motion on the basis of the plain language of the MLPA without regard to the Amended Complaint's inaccurate characterizations of that language. *See, e.g.*, *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) ("[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."); *Porky Prods., Inc. v. Nippon Express U.S.A. (Ill.), Inc.*, 1 F. Supp. 2d 227, 230 (S.D.N.Y. 1997) ("[W]hen language contained in a contract is clear or where any ambiguity may be resolved by reference to other parts of the contract itself, the court is to construe the contract" as a matter of law).

As will be made clear, U.S. Bank's allegations in the Amended Complaint fail to show that Barclays breached any provision of the MLPA, and the allegations fail to demonstrate that the alleged breach by Barclays caused any damage to U.S. Bank.

I. **BARCLAYS SATISFIED ITS OBLIGATION UNDER § 4(B) OF THE MLPA TO ASSIGN ITS INTEREST IN THE LETTER OF CREDIT.**

   a. **The Parties to the MLPA Agreed that Barclays Was Required to Assign Its Interest in Letter-of-Credit Proceeds, But Never Agreed That Barclays Was Required to Transfer any Letters of Credit Without Instruction.**

The plain language of the MLPA requires that Barclays assign its interest in the letter of credit but, importantly, requires nothing more of Barclays with respect to the letter of credit

---

[4] The parties agree that New York law applies in this action.

unless and until U.S. Bank directed otherwise.  U.S. Bank alleges that "[p]ursuant to Section 4(b) of the MLPA, Barclays represented that all of its rights and interest in any material collateral securing the loan was assigned to" Bank of America, and that Barclays' delivery of the letter of credit without completing the letter of credit's transfer form breached this provision.  (Amend. Compl. ¶¶ 16, 26–27.)  In this respect, U.S. Bank misunderstands the MLPA.  In § 4(b) of the MLPA, Barclays "ma[de] the representations and warranties contained in Schedule II . . . to and for the benefit of [the purchaser]. . . with respect to (and solely with respect to) each Mortgage Loan."  (Oberkampf Decl. Ex. A at 5.)  In turn, Representation 43 of Schedule II provides: "<u>Assignment of Collateral</u>.  All of [Barclays'] interest in any material collateral securing any Mortgage Loan has been *assigned* to [the purchaser]."  (Oberkampf Decl. Ex. A, Schedule II at 12 (emphasis added).)  On its face, therefore, § 4(b) of the MLPA and the incorporated Representation 43 required only that Barclays "warrant[]" that it had "assigned" its "interest" in the letter of credit.

As this contractual language makes clear, the parties to the MLPA did not contemplate that Barclays had an obligation to *transfer* the letter of credit by submitting the substitution-of-beneficiary form without instruction from U.S. Bank.  In the letter-of-credit context, "assignment" is a legal term of art, referring to a beneficiary giving another party the right to receive proceeds once a letter of credit has been drawn on.  "Transfer" is also a legal term of art, but in contrast to assignment, it refers to a beneficiary giving another party the right to draw on a letter of credit in the first place.  Judge Leisure explained this important difference in terminology:

> [T]he beneficiary of a letter of credit may transfer the credit to another, in which case the transferee, in effect, steps into the shoes of the beneficiary, thereby replacing it and becoming the party entitled to draw proceeds under the credit. A beneficiary alternatively may assign its right to the proceeds of the credit, in

5

> which case the only change effectuated is that the assignee becomes the only party entitled to the proceeds of the credit, while the original beneficiary maintains all other rights and obligations under the credit, including the duty to present the necessary documentation to the issuer so that payment may be issued to the assignee.

*MSF Holdings Ltd. v. Fid. Trust Co. Int'l*, 435 F. Supp. 2d 285, 296–97 (S.D.N.Y. 2006) (internal citation omitted). *Accord, e.g., Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, AS.*, 748 F. Supp. 177, 181–82 (S.D.N.Y. 1990) ("The UCP-ICC distinguishes between 'transfer' of a letter of credit and 'assignment' of the proceeds. A transfer effectuates a more complete change."); John F. Dolan, *The Law of Letters of Credit* § 10.01 (rev. ed. 2003) ("Letter of credit law distinguishes between the transfer of the right to draw under a credit and the assignment of the right to take the credit proceeds."), *quoted in MSF Holdings*, 435 F. Supp. 2d at 297.

Accordingly, the parties in the MLPA maintained a careful distinction between transfer and assignment, using both terms of art when the parties intended to encompass both concepts and using only one or the other when the intent was to convey one concept, but not both. The second paragraph of the MLPA, for example, uses both terms when it provides that "[t]he Seller desires to sell, *assign*, *transfer* and otherwise convey to the Purchaser[ the Mortgage Loans.]" (Oberkampf Decl. Ex. A at 1 (emphasis added).) Similarly, § 2(a) of the MLPA provides that "the Seller will *transfer*, *assign*, set over and otherwise convey to the Purchaser, without recourse, but subject to the terms and conditions of this Agreement, all the right, title and interest of the Seller in and to the Mortgage Loans (other than the Servicing Rights)." (*Id.* at 2 (emphasis added).) By contrast, the third paragraph of the MLPA uses only the term "transfer" when it provides that: "The Purchaser intends to *transfer* or cause the transfer of . . . the Mortgage Loans[.]" (*Id.* at 1 (emphasis added).) And, most importantly, the MLPA provisions at issue

6

here required Barclays to "assign" its "interest" in the letter of credit but make no mention of transfer. (*Id.* at Schedule II at 12 (emphasis added).)

Under New York law, it is a basic principle of contract construction that "legal terms of art," such as the terms "assignment" and "transfer" in the MLPA, "are presumed to have been used with their accustomed meaning, especially where the context and circumstances reveal no contrary direction[.]" *Suffolk Bus. Ctr., Inc. v. Applied Digital Data Sys., Inc.*, 78 N.Y.2d 383, 388 (1991). It is also well-settled that where contracting parties use two different terms (such as "transfer" versus "assign"), the parties are presumed to have intended each term to have a different meaning. *See, e.g., Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F. Supp. 2d 398, 4007 (S.D.N.Y. 2010) ("To merge these terms as if they were one would render meaningless the distinction between them."); *Int'l Fid. Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000) (noting that sophisticated parties "must be presumed . . . to use different words and construction to establish distinctions in meaning"). These two interpretive principles compel the conclusion that when Representation 43 of Schedule II of the MLPA — a contract between sophisticated parties advised by leading law firms — used the word "assignment," the parties meant what they said, *i.e.*, "assignment," not "transfer." Thus, § 4(b) of the MLPA required Barclays to *assign* its interest in the proceeds drawn under the letter of credit — which it did — but did not require Barclays to *transfer* the letter of credit by submitting the beneficiary-substitution form on U.S. Bank's behalf without instruction.

It was unnecessary to require Barclays to transfer the letter of credit on Barclays' own accord because Barclays had agreed under the MLPA to execute and deliver instruments per a reasonable request by U.S. Bank. If the need arose to draw on the letter of credit at issue here, U.S. Bank (the trustee) would present the letter of credit to Bank of America (the issuer),

7

together with the General Assignment, and demand payment.  Bank of America, as the Master Servicer of the mortgage-loan trust for which U.S. Bank acted as trustee, ostensibly would honor the draft and make payment to U.S. Bank.  But in the unlikely event that Bank of America refused to honor the draft on the ground that neither the purchaser nor U.S. Bank is the beneficiary originally named in the letter of credit, *see* N.Y. U.C.C. § 5-112(b) (McKinney 2012), U.S. Bank could direct Barclays to submit the substitution-of-beneficiary form accompanying the letter of credit and thereby effect a complete transfer.  Importantly, Barclays would be required to comply with U.S. Bank's directive under § 15 of the MLPA, in which Barclays "agree[d] to execute and deliver such instruments and take such further actions as the other party may . . . reasonably request[.]" (Oberkampf Decl. Ex. A at 15.)  The parties to the MLPA therefore agreed that there would be no need for Barclays to submit the transfer form accompanying the letter of credit — unless and until U.S. Bank so directed.

### b. As Agreed, Barclays Completed a Legally Valid Assignment of its Interest in the Letter of Credit.

Given that the MLPA required only an assignment of Barclays' interest in the letter of credit, U.S. Bank's allegation that Barclays breached § 4(b) of the MLPA fails as a matter of law, as Barclays' execution and delivery of the General Assignment effected a legally valid assignment.  In executing a general assignment in blank and delivering the assignment, along with the letter of credit, to U.S. Bank, Barclays assigned its interest in the letter of credit.  In the General Assignment, Barclays "assign[ed] . . . all right, title and interest of [Barclays] in and to . . . [a]ll other documents and interests relating to . . . the Loan" secured by the letter of credit. (Oberkampf Decl. Ex. D.)  These "other documents" undoubtedly included the letter of credit.  Barclays then delivered the General Assignment to U.S. Bank's predecessor, which confirmed

8

receipt and review of the mortgage-loan file containing these documents.  (*See* Oberkampf Decl. Exs. E–F.)

Barclays' actions in this regard effected a complete assignment of its interest in proceeds under the letter of credit.  N.Y. U.C.C. § 5-114(b) (McKinney 2012) provides that "[a] beneficiary may assign its right to part or all of the proceeds of a letter of credit . . . before presentation as a present assignment of its right to receive proceeds[.]" *Accord id.* NYSBA Committee Rep. (noting that this provision "clarifies that an assignment of proceeds of a letter of credit before presentation operates as *a present assignment*") (emphasis added).  Although the letter of credit by its terms "is subject to the International Standby Practices 1998, ICC Publication No. 590" (the "ISP98") (Oberkampf Decl. Ex. C at 2), New York law still governs because the ISP98 addresses only the effect and not the creation of an assignment.  *See* N.Y. U.C.C. § 5-116(c) (McKinney 2012) (requiring application of New York law unless a conflict exists).  Thus, under N.Y. U.C.C. § 5-114(b), Barclays' General Assignment operated as a "present assignment of its right to receive proceeds" under the letter of credit, as Bank of America as issuer could not unreasonably withhold consent to the assignment.  *See* N.Y. U.C.C. § 5-114(c).  Barclays therefore complied with the MLPA's requirement that Barclays "assign[]" its "interest" in the letter of credit.  (Oberkampf Decl. Ex. A, Schedule II at 12.)

II. **BARCLAYS SATISFIED ITS OBLIGATION UNDER § 2(C) OF THE MLPA TO DELIVER THE LETTER OF CREDIT TO U.S. BANK.**

In addition to alleging that Barclays agreed to transfer the letter of credit under § 4(b) of the MLPA, U.S. Bank also alleges that Barclays in § 2(c) of the MLPA agreed "to assign and transfer its rights and interest in the collateral securing the Loan to [the purchaser], including its rights as beneficiary of the Letter of Credit" and "to meet all of the requirements of Section 2.01

9

of the PSA[.]" (Am. Compl. ¶¶ 17, 18.) This allegation is unsupported by the MLPA's text. Section 2(c) of the MLPA provides in pertinent part:

> [T]he Seller shall deliver or cause to be delivered to the Purchaser or, if so directed by the Purchaser, to the Trustee or a custodian designated by the Trustee (a "<u>Custodian</u>"), the documents, instruments and agreements required to be delivered by the Purchaser to the Trustee under Section 2.01 of the Pooling and Servicing Agreement, and meeting all the requirements of such Section 2.01, and such other documents, instruments and agreements as the Purchaser or the Trustee shall reasonably request.

(Oberkampf Decl. Ex. A at 2–3.) Section 2(c) neither required Barclays to convey a notice of transfer to the issuer of the letter of credit, nor otherwise to transfer the letter of credit to BACM, nor to "meet all of the requirements of Section 2.01 of the PSA" as U.S. Bank alleges. (Amend. Compl. ¶ 18.) Rather, § 2(c) only required Barclays to deliver to the purchaser, U.S. Bank (the trustee), or a designated custodian (i) documents that § 2.01 of the PSA required the purchaser to deliver to U.S. Bank, and (ii) other documents that the purchaser or U.S. Bank might reasonably request.

With respect to the first requirement, the documents required to be delivered by BACM (as depositor under the PSA) to U.S. Bank under § 2.01 of the PSA consisted of, as specified in that section, "the Mortgage File and any Additional Collateral (other than Reserve Funds) for each Mortgage Loan acquired by the Depositor [BACM] from the Mortgage Loan Sellers[.]" (Oberkampf Decl. Ex. B at 87.) Those defined terms — Mortgage File and Additional Collateral — each incorporate a list of documents, but those lists do not encompass the paperwork needed to transfer the letter of credit. (Oberkampf Decl. Ex. B at 8, 47–50.) Barclays delivered the mortgage file, including the original letter of credit, in April 2006. (Oberkampf Decl. Ex. E, Attachment at 1.) U.S. Bank does not, and indeed could not, allege that Barclays failed to

10

deliver any documents that § 2.01 obligated BACM to deliver to U.S. Bank or a designated custodian.

Nor does U.S. Bank allege that Barclays failed to deliver any additional documents (including any transfer paperwork) that it reasonably requested. This is significant as, because the plain language of PSA § 2.01 did not contain a self-executing requirement that Barclays deliver transfer paperwork to an issuer, such a requirement, if it existed at all, would have arisen from the requirement that Barclays deliver "such documents" as the "purchaser or the Trustee [U.S. Bank] shall reasonably request."

Indeed, in the next sentence of Section 2.01 of the PSA, BACM separately and "in addition" represented to U.S. Bank that it had contractually obligated Barclays to prepare and deliver *to the letter of credit's issuer* (*i.e.*, Bank of America) any paperwork that Bank of America might require to "assign" Barclays' rights thereunder:

> In addition, with respect to each Mortgage Loan under which any Additional Collateral is in the form of a Letter of Credit as of the Closing Date, the Depositor [BACM] hereby represents and warrants that it has contractually obligated the Mortgage Loan Sellers to cause to be prepared, executed and delivered *to the issuer of each such Letter of Credit* such notices, assignments and acknowledgments as are required under such Letter of Credit to assign, without recourse, to the Trustee the related Mortgage Loan Seller's rights as the beneficiary thereof and drawing party thereunder; provided that the originals of such Letter of Credit shall be delivered to the Master Servicer.

(Oberkampf Decl. Ex. B at 87 (emphasis added) (internal emphasis omitted).) Critically, however, Barclays was not a party to the PSA and therefore was not bound by it. Whatever representations BACM made to U.S. Bank in the PSA, only the contract that Barclays actually signed — the MLPA — imposed any obligations upon Barclays, and as discussed above, neither § 4(b) nor § 2(c) of the MLPA (nor any other provision of the MLPA) contained a self-executing provision requiring Barclays to deliver any documents to a third party, like the issuer of the letter

11

of credit. Rather, the MLPA required only that Barclays deliver certain documents to the purchaser, U.S. Bank, or a designated custodian, which Barclays did.

This is not to say that no provision in the MLPA implemented BACM's representation regarding letters of credit in § 2.01 of the PSA. To the contrary, as indicated above, § 2(c) of the MLPA required Barclays to provide any other documents the purchaser or U.S. Bank might reasonably request. But that provision, when both agreements are read together, was not self-executing; rather Barclays' obligation to provide such additional documents, including any documents to be provided to any third party, such as a notice to the issuer of the letter of credit, was triggered only by a request by the purchaser or U.S. Bank as explicitly provided in the PSA. (Oberkampf Decl. Ex. B at 87).

Indeed, the plain language of the PSA confirms that this was the intended procedure. Section 3.02(b)(ii) of the PSA obligated BACM as the purchaser, within 60 days of closing, to "notify each provider of a letter of credit" for any serviced loan of the new "beneficiary under each such letter of credit." (Am. Compl. ¶ 24.) Had the purchaser complied with that obligation, it would have been in a position to request that Barclays prepare any forms needed to accomplish that or even to prepare the forms itself. Otherwise, there would have been two independent obligations (one from Barclays and one from the purchaser) to notify each issuer of a letter of credit of a change of beneficiary. But the purchaser did not comply with its obligations under § 3.02(b)(ii) of the PSA, (*see* Am. Compl. ¶ 29), and U.S. Bank nowhere alleges that any party ever requested that Barclays prepare the paperwork required to effect a transfer of the letter of credit or otherwise to notify Bank of America as issuer of the letter of credit of a new beneficiary of the letter of credit.

### III. THE AMENDED COMPLAINT FAILS TO ALLEGE THAT BARCLAYS' ACTS OR OMISSIONS, AS OPPOSED TO U.S. BANK'S OWN FAILURES, DAMAGED U.S. BANK

U.S. Bank's breach-of-contract claim also fails as a pleading matter because the Amended Complaint fails to show that Barclays' alleged breach actually caused the loss of which U.S. Bank complains. Under New York law, "[c]ausation is an essential element of damages in a breach of contract action," and "a plaintiff must prove that a defendant's breach *directly and proximately caused* his or her damages." *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52–53 (2d Cir. 2011) (emphasis added). Here, the Amended Complaint omits details necessary to the required element of causation "plausible" under *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). The Amended Complaint contains no allegation that U.S. Bank ever attempted to draw on the letter of credit before its expiration, and it does not allege that Bank of America as issuer would have been required to renew the letter of credit yet again if Barclays or U.S. Bank had so directed. This means that Barclays' alleged breach was not the cause of the letter of credit's expiration, which did not depend on an extension request or expiration notice. Also missing from the Amended Complaint is any allegation that U.S. Bank acted with diligence in drawing on the letter of credit or, at the least, demanding some action on Barclays' part. The dearth of factual allegations supporting causation is fatal to U.S. Bank's claims.

### CONCLUSION

The MLPA required Barclays (i) to assign its interest in the letter of credit to the purchaser, BACM, (ii) to deliver the letter of credit to the trustee, U.S. Bank, and (iii) to take any other action that BACM or U.S. Bank requested. Barclays satisfied all three requirements, and nothing required Barclays to submit a transfer notice to the letter of credit's issuer. Thus,

13

especially in light of the Amended Complaint's pleading defects, U.S. Bank has failed to state a claim against Barclays, and its breach of contract action against Barclays should be dismissed with prejudice.

Dated: October 4, 2012

> Respectfully submitted,
>
>  /s/ Camille Oberkampf
> Jonathan D. Schiller
> Camille Oberkampf
> BOIES, SCHILLER & FLEXNER LLP
> 575 Lexington Avenue, 7th Floor
> New York, NY 10022
> Phone: (212) 446-2300
> Facsimile: (212) 446-2350
>
> Jonathan M. Shaw *(pro hac vice)*
> 5301 Wisconsin Avenue, NW
> Washington, DC 20015
> Phone: (202) 237-2727
> Fax: (202) 237-6131