UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, SUCCESSOR TO WELLS FARGO BANK, N.A., SUCCESSOR TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF BANC OF AMERICA COMMERCIAL MORTGAGE INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-2,<br><br>                    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., and BARCLAY'S CAPITAL REAL ESTATE INC.,<br><br>                    Defendants.<br>_____ | )<br>)  Case No. 12-cv-4873-CM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF DEFENDANT BANK OF AMERICA, N.A.
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................................ 2

A.   The Thayer Loan And The Letter Of Credit ............................................................... 2

B.   The MLPA And The PSA .............................................................................................. 2

C.   Expiration Of Thayer Letter Of Credit And Default Of Thayer Loan ...................... 4

D.   This Lawsuit ................................................................................................................... 4

STANDARD FOR DISMISSAL ...................................................................................................... 6

ARGUMENT ..................................................................................................................................... 7

I.    PLAINTIFF'S CLAIM IS BARRED BY THE CLEAR TERMS OF THE PSA ......................... 8

II.   ACCEPTING PLAINTIFF'S ALLEGATIONS AS TRUE, BANK OF AMERICA HAD
      NO OBLIGATIONS WITH RESPECT TO THE THAYER LETTER OF CREDIT ................. 11

III.  EVEN ASSUMING BANK OF AMERICA BREACHED THE PSA, THAT BREACH
      COULD NOT HAVE CAUSED PLAINTIFF'S LOSSES ....................................................... 13

CONCLUSION ................................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 6, 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 6, 7

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ................................................................................. 7

*Fisk v. Letterman*,
  401 F. Supp. 2d 362 (S.D.N.Y. 2005) ................................................................. 13

*LNC Inv., Inc. v. First Fidelity Bank, N.A.*,
  173 F.3d 454 (2d Cir. 1999) ................................................................................. 15

*MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*,
  435 F. Supp. 2d 285 (S.D.N.Y. 2006) ................................................................. 14

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*,
  No. 10-cv-1777, 2011 WL 381612 (E.D.N.Y. Feb. 2, 2011) ................................ 13

*Scalisi v. Fund Asset Management, L.P.*,
  380 F.3d 133 (2d Cir. 2004) ................................................................................. 6, 16

**Statutes**

N.Y. U.C.C. § 5-112 ............................................................................................. 14

N.Y. U.C.C. § 5-114(b) ......................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 6, 7

**Other Authorities**

E. Allan Farnsworth,
  *Contracts* § 12.1 (2d ed. 1990) ........................................................................... 15

Defendant Bank of America, N.A. ("Bank of America") respectfully submits this memorandum of law in support of its motion to dismiss plaintiff's First Amended Complaint (Dkt. No. 36), pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiff U.S. Bank, N.A. ("Plaintiff" or "Trustee") alleges that, in connection with the securitization of a pool of commercial mortgage loans, Barclays Capital Real Estate, Inc. ("Barclays"), the originator of one of the loans, failed to transfer and assign its rights in a small part of the collateral securing the loan, as required by the relevant Mortgage Loan Purchase and Sale Agreement ("MLPA"), when Barclays sold the loan into the pool. Plaintiff contends that "Barclays breached its obligations under the MLPA by failing and/or refusing to assign its beneficiary rights" under a $1.25 million letter of credit that partially secured the loan. See First Amended Complaint ("Am. Cplt.") ¶ 48.

Seeking to have its proverbial cake and eat it too, Plaintiff has brought a routine breach of contract case against Barclays, but also seeks to hold Bank of America liable for Barclays' alleged failures. The Court should reject that effort. As explained below, Plaintiff's exclusive remedy for its alleged injury lies in the MLPA against Barclays. Bank of America was not a party to the MLPA, and had no authority to transfer or assign Barclays' letter of credit pursuant to the MLPA. Further, accepting Plaintiff's allegations in the amended complaint as true, Bank of America did not owe any obligation with respect to the letter of credit under the one agreement to which it *was* a party. Finally, even assuming that Bank of America owed some

---

[1] On August 30, 2012, Bank of America moved to dismiss the original complaint in this action, which stated claims for breach of contract and breach of fiduciary duty. In lieu of responding to that motion to dismiss, on September 18th, Plaintiff filed an amended complaint. As discussed in more detail below, Plaintiff's amended complaint abandons the fiduciary duty claim, but restates some of the allegations supporting the breach of contract claim.

contractual duty with respect to the letter of credit, Plaintiff has failed to allege any facts to support an inference that Bank of America's supposed breach of that duty caused Plaintiff's losses.   The Court should dismiss the amended complaint against Bank of America with prejudice.

## FACTUAL BACKGROUND

For purposes of this motion to dismiss only, Bank of America accepts the facts alleged in the amended complaint as true.

### A.  The Thayer Loan And The Letter Of Credit

On April 19, 2006, Barclays originated a $24 million commercial mortgage loan ("Thayer Loan").  Am. Cplt. ¶¶ 7-8.  The collateral for the Thayer Loan included, among other things, a $1.25 million letter of credit issued for the benefit of Barclays ("Thayer Letter of Credit").  *Id.* ¶ 9.  The Thayer Letter of Credit could be drawn upon by the beneficiary under certain conditions specified in the loan agreement, including (among other things), if the borrower defaulted on the loan.

### B.  The MLPA And The PSA

A few months after it made the Thayer Loan, on June 22, 2006, Barclays sold the Thayer Loan to Banc of America Commercial Mortgage Inc. ("BACM" or "Depositor") pursuant to the terms of the MLPA (attached at Trunk Decl., Ex. A), so that it could be pooled in a trust with other commercial mortgage loans, securitized, and sold to investors.  Am. Cplt. ¶¶ 11-12. Notably, Bank of America was not a party to the MLPA, and therefore the MLPA did not impose any obligations on Bank of America.

The MLPA did, however, impose several obligations on Barclays with respect to the Thayer Loan and the Thayer Letter of Credit.  First, the MLPA obligated Barclays to "transfer,

2

assign, set over and otherwise convey to [BACM], without recourse . . . all the right, title and interest" it held in the Thayer Loan.  See Ex. A § 2(a) (p. 2).  The MLPA further obligated Barclays to assign and transfer its rights as beneficiary under the Thayer Letter of Credit, which Barclays represented and warranted that it had done.  See Ex. A §§ 2(c), 4(b) (pp. 2-3, 5), Schedule II ¶¶ 2, 43 (pp. 1, 12); see also Am. Cplt. ¶¶ 16-19.  As Plaintiff alleges, "[p]ursuant to Section 2(c) of the MLPA, Barclays agreed to assign and transfer its rights and interest in the collateral securing the Loan to BACM, including its rights as beneficiary of the Letter of Credit" (Am. Cplt. ¶ 17), and "[p]ursuant to Section 4(b) of the MLPA, Barclays represented that all of its rights and interest in any material collateral securing the Loan" had been so assigned.  Am. Cplt. ¶ 16.

Also on June 22, 2006, BACM[2] closed on the Pooling and Servicing Agreement ("PSA," excerpts attached at Trunk Decl., Ex. B), pursuant to which BACM transferred and assigned its rights, title, and interest in the Thayer Loan to LaSalle Bank National Association—former trustee for the registered certificate holders of the securitization trust and Plaintiff's predecessor-in-interest.  Am. Cplt. ¶ 12.  At the same time, "Barclays agreed to meet all of the requirements of Section 2.01 of the PSA" (Am. Cplt. ¶ 18), which "obligate[d] Barclays to prepare, execute, and deliver all documentation necessary to transfer and assign its rights as the beneficiary of the Letter of Credit."  Am. Cplt. ¶ 19; see also Ex. A § 2(d) (p. 3) (Barclays "hereby represents that it has . . . delivered to the Trustee the Mortgage File for each Mortgage Loan").

The PSA authorized Bank of America to act as "Master Servicer" for the Thayer Loan. Am. Cplt. ¶ 13.  Under the PSA, the Master Servicer generally is responsible for servicing the loans, collecting mortgage payments, and the like.  See generally Ex. B Art. III (pp. 106-96).

---

[2] BACM is not a party to this case.

**C.  Expiration Of Thayer Letter Of Credit And Default Of Thayer Loan**

According to Plaintiff, on February 11, 2010, Barclays received a Notice of Non-Extension of the Thayer Letter of Credit and failed to notify anyone of its receipt of this Notice. Am. Cplt. ¶¶ 31, 33.  On May 1, 2010, the Thayer Letter of Credit expired.  *Id.* ¶ 34.

Plaintiff alleges that "[e]vents of default have occurred" in connection with the Thayer Loan, including the borrower's failure to make its required payments.  Am. Cplt. ¶ 44.  Plaintiff, as Trustee, is presumably attempting to liquidate the collateral for the Thayer Loan to recoup the losses stemming from the borrower's default.  Plaintiff alleges that, because the Thayer Letter of Credit expired, it "could not draw on the Letter of Credit," which "caused a material and adverse effect on the distributions payable on the certificates."  *Id.* ¶ 45.  Plaintiff seeks damages in an amount no less than the $1.25 million original value of the Thayer Letter of Credit.  *Id.* ¶¶ 52, 61.

**D.  This Lawsuit**

On June 21, 2012, in its capacity as Trustee for the registered certificate holders, Plaintiff filed this suit against Barclays and Bank of America.  Plaintiff's original complaint alleged breach of contract as to Barclays, and breach of contract and fiduciary duty as to Bank of America.  See Dkt. No. 1.  On August 30th, Barclays and Bank of America each moved to dismiss the claims against them.  See Dkt. Nos. 22, 25.  Plaintiff filed an opposition to Barclays' motion to dismiss on September 14th.  See Dkt. No. 32 ("Pl. Opp. to Barclays' Mtn. to Dismiss").  Plaintiff did not respond to Bank of America's motion to dismiss.  On September 18th, Plaintiff filed an amended complaint as to both defendants.

With respect to Barclays, Plaintiff's allegations in its amended complaint are materially identical to those in its original complaint.  See Pl. Opp. to Barclays' Mtn. to Dismiss at 1, n.1.  Plaintiff alleges that, despite Barclays' contractual obligations under the MLPA, Barclays "failed

4

to assign its rights as beneficiary of the Letter of Credit" (Am. Cplt. ¶ 26), and subsequently "took no action to cure its breach." *Id.* ¶ 28. Plaintiff contends that Barclays' alleged "failure to assign its rights as beneficiary under the Letter of Credit constituted a Material Breach or Material Document Defect under the MLPA." *Id.* ¶ 27. Further, "[a]lthough Barclays was no longer the rightful beneficiary of the Letter of Credit and was obligated by the MLPA and PSA to transfer its rights as beneficiary" under the Letter of Credit, it failed to "notify anyone of its receipt of the Non-Extension Notice" (*id.* ¶ 33), "caus[ing] [Plaintiff] to lose collateral for the Loan in the amount of $1,250,000.00." *Id.* ¶ 51.

Plaintiff's allegations as to Bank of America in the amended complaint are similar, but not identical, to those in the original complaint. With respect to its breach of contract claim, Plaintiff still alleges that, as "Master Servicer" of the Thayer Loan, Bank of America was required by section 3.02(b)(ii) of the PSA to notify the issuer of the Thayer Letter of Credit within 60 days of the closing date of the PSA of the change in beneficiary under the Thayer Letter of Credit (*i.e.*, away from Barclays and in favor of the Trustee). See Am. Cplt. ¶ 24; see also Complaint ("Cplt.") ¶ 22. But Plaintiff now alleges that section 3.02(b)(ii) "further required Bank of America to maintain and execute" the re-assigned Thayer Letter of Credit "in accordance with the related loan documents." Am. Cplt. ¶ 25.

The primary difference between Plaintiff's amended complaint and its original complaint is that Plaintiff has completely abandoned its breach of fiduciary duty claim against Bank of America. In our motion to dismiss, we explained that the PSA did not create—but affirmatively foreswore—a fiduciary relationship between Bank of America and the Trustee. See Dkt. No. 26 ("Bank of America Memo. in Supp. of Mtn. to Dismiss") at 10-14. We further explained why the PSA's "Servicing Standard," which called for Bank of America to fulfill its duties and

obligations under the PSA with "the same care, skill, prudence and diligence as is normal and usual in [] general mortgage servicing" (see Ex. B § 1.01 (p. 72)) did not create a fiduciary relationship between the parties.  See Bank of America Memo. in Supp. of Mtn. to Dismiss at 13-14.

In its amended complaint, Plaintiff attempts to recast its failed fiduciary duty claim as an expanded claim for breach of contract.  Plaintiff alleges that "[s]ection 3.01 of the PSA obligated Bank of America to service the Loan in accordance with the Servicing Standard" (Am. Cplt. ¶ 22), and that Bank of America breached that provision by "fail[ing] to take any action between the closing date of the Loan and the cancellation of the Letter of Credit to cause or effect the assignment and/or transfer of the Letter of Credit, including . . . directing Barclays to transfer and assign the Letter of Credit" (*id.* ¶ 38), and by "fail[ing] to take any action to notify the Trustee or Special Servicer of the pending termination of the Letter of Credit."  *Id.* ¶ 32.  See also *id.* ¶ 41 (alleging that Bank of America violated the Servicing Standard by "fail[ing] to take any action to preserve the Letter of Credit, which was the Loan's collateral, after the issuance of the Non-Extension Notice").

## STANDARD FOR DISMISSAL

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must accept well-pleaded facts as true, it need not accept as true "legal conclusions or unwarranted deductions of fact."  *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 137 (2d Cir. 2004).  Plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.  Further, the court's plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (additional internal quotation omitted).

On a motion to dismiss under Rule 12(b)(6), the court may consider documents incorporated by reference in the complaint, as well as documents integral to the complaint.  See, *e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (defining "integral" as where complaint "relies heavily" upon document's "terms and effect").  The MLPA and PSA unquestionably satisfy both standards:  Plaintiff relies on those agreements as the exclusive source of defendants' obligations, and the amended complaint cites numerous times to their terms.  Accordingly, Bank of America attaches the relevant excerpts of both agreements in support of its motion.[3]

## ARGUMENT

Plaintiff's restyled allegations still fall well short of what is required to state a claim for breach of contract.  First, Plaintiff's claim is premised entirely on alleged misconduct for which the exclusive remedy lies in the MLPA—to which Bank of America was not a party.  Second, Plaintiff fails to explain how Bank of America's general obligations under the PSA were triggered with respect to the Thayer Letter of Credit in particular, given that Barclays failed to properly assign and transfer the Thayer Letter of Credit away from itself.  Finally, Plaintiff does not—and cannot—explain how Bank of America's alleged breaches could possibly have caused

---

[3] In its opposition to Barclays' motion to dismiss, Plaintiff agrees that the MLPA may be considered by the Court in this context.  See Pl. Opp. to Barclays' Mtn. to Dismiss at 3, n.3.  Plaintiff also agrees that its claims should be evaluated under New York law, as specified in the relevant agreements.  See *id. at* 6, n.5; see also Ex. A § 14 (pp. 14-15); Ex. B § 12.04 (p. 282).

any of Plaintiff's losses, given that Barclays was the only party with the power to transfer and assign its interest in the Thayer Letter of Credit.   Put simply, Bank of America has no place in this dispute.   The amended complaint against Bank of America should be dismissed with prejudice.

## I.   PLAINTIFF'S CLAIM IS BARRED BY THE CLEAR TERMS OF THE PSA

No matter how Plaintiff styles its case, the PSA bars Plaintiff's claim against Bank of America.   The gravamen of the amended complaint—and the only source of Plaintiff's injury—is Barclays' alleged failure to transfer and assign its rights under the Thayer Letter of Credit.   According to Plaintiff, "Barclays agreed to assign and transfer its right and interest in the . . . Letter of Credit" (Am. Cplt. ¶ 17); "Barclays represented that all of its rights and interest in any material collateral" had been assigned (*id.* ¶ 16); but then Barclays "failed to assign its rights as beneficiary of the Letter of Credit."   *Id.* ¶ 26.   Plaintiff's allegations against Bank of America are entirely derivative of its allegations against Barclays.   See, *e.g.*, *id.* ¶ 38 (citing Bank of America's alleged failure "to cause or effect the assignment and/or transfer of the Letter of Credit, including but not limited to directing Barclays to transfer and assign the Letter of Credit"); see also *id.* p. 5 (citing "***Defendants'*** Failure to Assign the Letter of Credit") (emphasis added).

Under the PSA, Bank of America cannot be held liable for Barclays' alleged failure of transfer and assignment.   Section 2.03(h) of the PSA unequivocally states: "The applicable Mortgage Loan Purchase and Sale Agreement provides the ***sole remedy*** available to the [Trustee] respecting any Breach or Document Defect with respect to Mortgage Loans sold by the related Mortgage Loan Seller."   Ex. B § 2.03(h) (p. 95) (emphasis added).   Plaintiff admits that "Barclays' failure to assign its rights as beneficiary under the Letter of Credit constituted a

Material Breach or Material Document Defect under the MLPA."  Am. Cplt. ¶ 27; see also Pl.

Opp. to Barclays' Mtn. to Dismiss at 12-13 ("Barclays' failure to take action to change the

beneficiary of the Letter of Credit or otherwise transfer or assign the Letter of Credit constituted

a Material Document Defect or Material Default under the MLPA.").  Thus, Plaintiff's exclusive

remedy in this case lies in the MLPA against Barclays.  Bank of America was not a party to the

MLPA, and Plaintiff has no recourse under the MLPA against Bank of America.[4]

This Court's analysis should begin and end with the clear and unambiguous terms of

Section 2.03(h) of the PSA.  Plaintiff attempts to plead around the PSA's exclusive-remedy

provision by alleging that Bank of America failed to perform particular tasks associated with

Barclays' required transfer and assignment of the Thayer Letter of Credit.  See, *e.g.*, Am. Cplt.

¶ 40 (alleging Bank of America failed to "notify" the provider of the Letter of Credit of the

change in legal beneficiary); Am. Cplt. ¶ 38 (alleging that Bank of America failed "to cause or

effect" Barclays' transfer and assignment of the Letter of Credit, including "directing" Barclays'

transfer and assignment).  Plaintiff's creative pleading should not be rewarded.

First of all, as discussed in further detail *infra*, Plaintiff has not pled facts sufficient to

create a plausible inference that Bank of America was responsible for any of these tasks under

the specific circumstances alleged in the amended complaint.  Because the Thayer Letter of

---

[4] Even if Plaintiff had not particularly alleged that Barclays' failure of assignment "constituted a Material Breach or Material Document Defect under the MLPA" (Am. Cplt. ¶ 27), it nevertheless would qualify as such under the PSA.  Barclays represented and warranted in the MLPA that it had "validly and effectively conveyed to the Purchaser all legal and beneficial interest in and to each Mortgage Loan," and that "[a]ll of [its] interest in any material collateral securing any Mortgage Loan has been assigned to the Purchaser."  See Ex. A § 4(b) (p. 5), Schedule II ¶¶ 2, 43 (pp. 1, 12).  The PSA provides that a breach of those representations and warranties constitutes a "Breach . . . with respect to Mortgage Loans" (Ex. B § 1.01 (p. 16)), which triggers application of PSA Section 2.03(h), and limits the Trustee's recourse to the MLPA.

Credit was neither transferred nor assigned by Barclays, Bank of America owed no duties with respect to the Thayer Letter of Credit at all.

In any event, the PSA makes abundantly clear that Bank of America bears no responsibility for any failure involving the documentation relating to transfer and assignment of the Thayer Letter of Credit.  Section 2.01(b) of the PSA states that Bank of America, as Master Servicer, shall not be liable "for any failure by [Barclays] . . . to comply with the document delivery requirements of the [MLPA] and this Section 2.01(b)."  Section 2.01(b), in turn, required Barclays to "deliver to and deposit with, or cause to be delivered to and deposited with, the Trustee . . . the Mortgage File and any Additional Collateral . . . for each Mortgage Loan," and to "cause to be prepared, executed and delivered to the issuer of each such Letter of Credit such notices, assignments and acknowledgments as are required under such Letter to Credit to assign, without recourse, to the Trustee the related Mortgage Loan Seller's rights as the beneficiary thereof and drawing party thereunder."  Ex. B § 2.01(b) (p. 87).[5]  Indeed, the PSA forswears any duty by Bank of America to determine whether a letter of credit even *exists*, much less to confirm that it has been properly assigned and delivered.  *Id*. § 2.02(d) (p. 91) ("Master Servicer" is not under any obligation "to determine whether any of the documents specified in [certain parts of the definition of 'Mortgage File,' including letters of credit] exist or are required to be delivered by [Barclays] in respect of any Mortgage Loan.").[6]  Accordingly, Plaintiff's exclusive remedy for the injury alleged in the amended complaint is against Barclays for breach of the MLPA.

---

[5] The PSA's definition of "Additional Collateral" includes the Letter of Credit.  See Ex. B § 1.01 (p. 8).

[6] In fact, the PSA expressly charges ***Plaintiff*** with this responsibility.  See Ex. B § 2.02(d) (p. 91) ("with respect to Letters of Credit . . . the Trustee shall perform the review set forth in Section 2.02(b)(iii)(A)-(C)").

## II.   ACCEPTING PLAINTIFF'S ALLEGATIONS AS TRUE, BANK OF AMERICA HAD NO OBLIGATIONS WITH RESPECT TO THE THAYER LETTER OF CREDIT

All of Plaintiff's allegations concerning Bank of America's supposed breach of the PSA assume that Bank of America had in hand a properly assigned and executed letter of credit.  But Plaintiff's own allegations (coupled with its statements in its brief opposing Barclays' motion to dismiss) make clear that Plaintiff's case presumes the exact opposite scenario.  Therefore, even viewing the facts in the light most favorable to Plaintiff, Bank of America had no obligations under the PSA with respect to the Thayer Letter of Credit.

For example, Plaintiff contends that Bank of America breached Section 3.02(b)(ii) of the PSA by allegedly failing to notify the issuer of the Thayer Letter of Credit of the change in beneficiary, and by allegedly failing to maintain and execute the Thayer Letter of Credit.  See Am. Cplt. ¶¶ 54, 56.  Section 3.02(b)(ii) of the PSA states, in relevant part:

> Within 60 days after the Closing Date (or within such shorter period as may be required by the applicable Letter of Credit), the Master Servicer shall notify each provider of a Letter of Credit for any Serviced Loan that the Master Servicer or the Special Servicer, on behalf of the Trustee for the benefit of the Certificateholders, shall be the beneficiary under each such Letter of Credit.  The Master Servicer shall maintain and execute each such Letter of Credit, if applicable, in accordance with the related loan documents.

Ex. B § 3.02(b)(ii) (p. 112).  Clearly, for there to exist any obligation to notify the issuer of the change in beneficiary, ***there must first have been a change in beneficiary***.  But this is precisely the event that Plaintiff alleges never occurred.  See, *e.g.*, Am. Cplt. ¶ 26 ("Barclays failed to assign its rights as beneficiary of the Letter of Credit").  Indeed, as Plaintiff itself explains, section 3.02(b)(ii)'s notice requirement "makes perfect sense" only "***after*** that event [Barclays' transfer and assignment] has taken place," and "Section 3.02(b)(ii) has no practical effect ***before*** Barclays has taken action to name the Trustee as the beneficiary; in that case, the Master

Servicer's notice to the issuer of the Letter of Credit will be rejected because, at that point, Barclays is the only party entitled to transfer the Letter of Credit."  Pl. Opp. to Barclays' Mtn. to Dismiss at 14 (emphases in original).

Similarly, by its plain terms, section 3.02(b)(ii)'s requirement that Bank of America "maintain and execute each such Letter of Credit" (Am. Cplt. ¶ 25) applies only to letters of credit held in favor of the trust.  As Plaintiff explains, however, "the Letter of Credit, based on Barclays' own admission, was never delivered to the Trust," and "[i]t was Barclays' failure to do this – i.e., to deliver all of the documents required by, and that meet all of the requirements of Section 2.01 – that caused Plaintiff's loss."  See Pl. Opp. to Barclays' Mtn. to Dismiss at 8-9, 12. Thus, Bank of America could not have had any obligation to "maintain" or "execute" the Thayer Letter of Credit either.

Plaintiff's remaining allegations as to Bank of America suffer the same flaw.  Bank of America could not have breached the PSA by allegedly "fail[ing] to take any action to notify the Trustee or Special Servicer of the pending termination of the Letter of Credit" (Am. Cplt. ¶ 32), or by allegedly "fail[ing] to take any action to preserve the Letter of Credit, which was the Loan's collateral, after the issuance of the Non-Extension Notice" (Am. Cplt. ¶ 41), because, as the amended complaint makes clear, Barclays was the one who received the Non-Extension Notice and "did not notify anyone of its receipt."  Am. Cplt. ¶¶ 31, 33; see also *id.* ¶ 36 ("As a proximate result of Barclays' failure to fulfill its obligation to transfer the Letter of Credit to the Master Servicer, the Master Servicer [*i.e.*, Bank of America] did not receive the Non-Extension Notice and did not draw on the Letter of Credit prior to its expiration").  Indeed, as noted above, Bank of America had no obligation to determine whether the Letter of Credit *existed*, much less

to confirm that it had been properly assigned, delivered, or preserved.  See Ex. B § 2.02(d) (p. 91).

"Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."  *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-cv-1777, 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011) (internal quotation marks omitted); see also *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) (court is "not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint").

Given Plaintiff's theory of the case—that Barclays failed to transfer and assign the Thayer Letter of Credit, failed to deliver the documents necessary for transfer and assignment of the Thayer Letter of Credit, and failed to notify anyone of its receipt of the Non-Extension Notice—this Court should not credit Plaintiff's incongruous allegations that ***Bank of America*** breached the PSA, when all of its obligations under that contract necessarily depended upon and presumed performance by Barclays.  For this reason as well, the Court should dismiss the amended complaint as to Bank of America.

## III.   EVEN ASSUMING BANK OF AMERICA BREACHED THE PSA, THAT BREACH COULD NOT HAVE CAUSED PLAINTIFF'S LOSSES

Even if this Court were to conclude that the PSA required Bank of America to perform certain functions relating to the Thayer Letter of Credit, despite the fact that Barclays had not properly delivered or assigned the Thayer Letter of Credit, Plaintiff's breach of contract claim must still fail.  As Plaintiff acknowledges, Barclays was the only party with the authority to transfer and assign its interest in the Thayer Letter of Credit.  Therefore, Plaintiff does not—and

cannot—allege any facts to create a plausible inference that Bank of America's alleged breach *caused* the injury alleged in the amended complaint.

Plaintiff alleges that Barclays, as the named beneficiary to the Letter of Credit, is the party that "failed to assign its rights as beneficiary of the Letter of Credit."  Am. Cplt. ¶ 26; see also *id.* ¶ 36 (alleging "Barclays' failure to fulfill its obligation to transfer the Letter of Credit to the Master Servicer").  As the named beneficiary, Barclays was the only party with the power or authority to effect transfer and assignment of the Letter of Credit.  See, *e.g.*, N.Y. U.C.C. § 5-112, Official Comment 1 ("The term 'transfer' refers to the *beneficiary's* conveyance of that right."); N.Y. U.C.C. § 5-114(b) ("A *beneficiary* may assign its right to part or all of the proceeds of a letter of credit."); *MSF Holding Ltd. v. Fiduciary Trust Co. Int'l*, 435 F. Supp. 2d 285, 296-97 (S.D.N.Y. 2006) (applying International Chamber of Commerce's Uniform Customs and Practice for Documentary Credits, "*beneficiary* of a letter of credit may transfer the credit to another" or "alternatively may assign its right to the proceeds of the credit") (all emphases added).

Plaintiff does not dispute that Bank of America had no authority or ability to force Barclays' hand.  Indeed, in Plaintiff's own words, "Barclays was the **only** party that could have caused the issuer of the Letter of Credit . . . to change the designated beneficiary of the Letter of Credit."  Pl. Opp. to Barclays' Mtn. to Dismiss at 6; see also *id.* at 14 ("Barclays was the only party with an independent ability to cause a change in the beneficiary of the Letter of Credit or that could direct a change in the party entitled to draw on the Letter of Credit.").

The PSA plainly contemplates that Barclays—the one and only party with such authority and ability—would do so, as required by the MLPA.  Thus, even if Bank of America was obligated to perform one or more functions with respect to the Thayer Letter of Credit, and failed

to satisfy those functions (which we do not admit), Plaintiff has not alleged any consequence of that supposed failure. See, *e.g.*, *LNC Inv., Inc. v. First Fidelity Bank, N.A.*, 173 F.3d 454, 464 (2d Cir. 1999) ("Ordinarily, causation is required to recover damages for breach of contract."); see also *id.* at 465 ("There is, of course, a fundamental requirement, similar to that imposed in tort cases, that the breach of contract be the cause in fact of the loss . . . .") (quoting E. Allan Farnsworth, *Contracts* § 12.1, at 841 (2d ed. 1990)).

The amended complaint does not allege any facts creating a plausible inference that Bank of America's actions caused Plaintiff's damages. Plaintiff alleges that, "[a]s a result" of Bank of America's failure to provide notice to the issuer of the Letter of Credit of the change in beneficiary, "the Non-Extension Notice was not delivered to Bank of America in its capacity as Master Servicer and Bank of America did not draw on the Letter of Credit prior to its expiration or otherwise take action to preserve the collateral, causing the loss of $1,250,000.00 of collateral for the Loan." Am. Cplt. ¶ 55. Here again, however, without Barclays' legal change in beneficiary having already taken place, Plaintiff does not allege facts—plausible or not— explaining how any notice by Bank of America would have caused the Notice of Non-Extension to have been sent to Bank of America on behalf of the intended new beneficiary, instead of Barclays as the legal beneficiary. Plaintiff also alleges that "[a]s a result of Bank of America's failure to service the Loan in accordance with the Servicing Standard, the Loan lost collateral in the amount of $1,250,000.00" (*id.* ¶ 60), but nowhere does Plaintiff fill the wide causal gap created by this allegation. Put another way, Plaintiff pleads no facts suggesting that, had Bank of America performed the functions Plaintiff believes it was obligated to perform under the PSA, that would in fact have effected legal assignment and transfer of the Thayer Letter of Credit. The

Court should not credit the amended complaint's "unwarranted deductions of fact." *Scalisi*, 380

F.3d at 137.

## CONCLUSION

For the reasons stated above, Bank of America respectfully requests that the First

Amended Complaint be dismissed as to Bank of America in its entirety, and with prejudice.

Dated:  October 4, 2012

/s/ Richard A. Sauber
Richard A. Sauber (*pro hac vice*)
Jennifer S. Windom (*pro hac vice*)
William J. Trunk (Bar No. 4720090)
**Robbins, Russell, Englert, Orseck,**
**Untereiner & Sauber LLP**
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
Phone: 202-775-4500
Fax: 202-775-4510

*Attorneys for Bank of America, N.A.*