## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **U.S. BANK NATIONAL ASSOCIATION,** *et al.*, | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 1:12-CV-04873-CM** |
| **BANK OF AMERICA, N.A., and BARCLAY'S CAPITAL REAL ESTATE, INC.,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO BARCLAYS CAPITAL REAL ESTATE, INC.'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR LEAVE TO AMEND COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................3

III.   LEGAL STANDARD ..........................................................................................5

       A.    Plaintiff need only allege facts to state a plausible claim for relief; Plaintiff clearly meets this burden ............................................................................5

       B.    Barclays' submission of materials outside the pleadings should not be considered by the Court; alternatively, this Court should convert Barclays' motion into a motion for summary judgment and allow Plaintiff an opportunity to conduct discovery and submit evidence in opposition to Barclays' pending motion ...........5

IV.   ARGUMENT .......................................................................................................8

       A.    The MLPA obligated Barclays to take the steps necessary so that the Trustee became the beneficiary of and party entitled to draw the Letter of Credit .............9

       B.    Barclays' narrow reading of "transfer" and "assign" conflicts with the clear intent of the MLPA and PSA; in any event Barclays never transferred or assigned the Letter of Credit ................................................................................................12

       C.    Barclays' hypothetical draw on the Letter of Credit only underscores why its motion to dismiss should be denied ...................................................................16

       D.    Barclays' failure to assign and transfer the Letter of Credit constituted a Material Document Defect or Material Breach that Plaintiff alleges Barclays was aware of and failed to take any action on ...........................................................................16

       E.    Section 3.02(b)(ii) of the PSA does not support Barclays' argument or otherwise relieve it of its obligations with respect to transfer and assignment of the Letter of Credit .................................................................................................................17

       F.    The Amended Complaint clearly and plausibly alleges that Barclays caused Plaintiff's damages ...............................................................................................18

V.    CONCLUSION .................................................................................................19

## TABLE OF AUTHORITIES

Page(s)

CASES

*Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.*,
748 F. Supp. 177 (S.D.N.Y. 1990) .......................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................5

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)............................................................................6, 7, 8

*Chance v. Armstrong*,
143 F.3d 698 (2d Cir. 1998)...................................................................................5

*Citibank, N.A. v. Morgan Stanley & Co. International*,
724 F. Supp. 2d 398 (S.D.N.Y. 2010)...................................................................10

*First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*,
193 F.3d 109 (2d Cir. 1999)...................................................................................8

*Forsberg v. Always Consulting, Inc.*
2008 WL 5449003 (S.D.N.Y. Dec. 31, 2008) .....................................................6, 7

*Friedl v. City of New York*,
210 F. 3d 79 (2d Cir. 2000) ...................................................................................8

*Greenfield v. Phillies Records*,
98 N.Y.2d 562 (N.Y. App. Div. 2002) ..................................................................10

*In re Initial Publ. Offering Secs. Litig.*,
383 F. Supp. 2d 566 (S.D.N.Y. 2005)....................................................................5

*In re IPO Securities Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003)...................................................................19

*Leonard F. v. Israel Discount Bank of New York*,
199 F.3d 99 (2d Cir. 1999) ....................................................................................8

*MSF Holding Ltd. v. Fidcuiary Trust Company International*,
435 F. Supp. 2d 285, 298-99 (S.D.N.Y. 2006) ...............................................14, 15

iii

*Phelps v. Kapnolas,*
   308 F.3d 180 (2d Cir. 2002).................................................................5

*Porky Prods., Inc. v. Nippon Express USA, Inc.,*
   1 F. Supp. 2d 227 (S.D.N.Y. 1997) ......................................................9

*Record Club of America, Inc. v. United Artists Records, Inc.,*
   890 F.2d 1264 (2d Cir. 1989)..............................................................10

*Ronani v. Sanofi, S.A.,*
   899 F.2d 195, 198 (2d Cir. 1990).........................................................20

*Roth v. Jennings,*
   489 F.3d 499 (2d Cir. 2007).................................................................6

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002).............................................................................19

*Weyerhauser Co. v. Isr. Disc. Bank of N.Y.,*
   895 F.Supp. 636 (S.D.N.Y. 1995) .......................................................14

*World Trade Ctr. Props., LLC v. Hartford Fire Ins. Co.,*
   345 F.3d 154 (2d Cir. 2003)............................................................10, 11

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.,*
   341 F. Supp. 2d 258 (S.D.N.Y. 2004)..................................................19

**STATUTES**

N.Y. S.B.A. Comm. Rep. to § 5-114 .........................................................14

N.Y. U.C.C. Law § 5-114(c), (d) .........................................................14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...........................................................1, 5, 6, 7

Fed. R. Civ. P. 15(a)(2) ...............................................................................19

The International Chamber of Commerce's Uniform Customs and Practice for Documentary
Credits (1993), Publication No. 500 .........................................................14

Plaintiff U.S. Bank National Association, successor to Wells Fargo Bank, N.A., successor to Bank of America, National Association, as successor by merger to LaSalle Bank National Association, as Trustee for the registered holders of Banc of America Commercial Mortgage Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-2 ("Plaintiff" or the "Trustee"), acting by, through and with authorization granted to its special servicer, Situs Holdings, LLC, formerly known as Helios AMC, LLC ("Situs") respectfully submits this memorandum of law in support of its opposition to Defendant Barclays Capital Real Estate, Inc. ("Barclays") motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

This case involves a letter of credit (the "Letter of Credit," as more specifically defined herein) issued by Bank of America, N.A. ("Bank of America"), that served as partial security for a real estate loan originated by Barclays.  The loan (and all of its collateral) was, following origination, to be transferred and assigned to a securitized trust, of which Plaintiff is the current Trustee.  However, the Letter of Credit in question never made it into the Trust, notwithstanding complex and exhaustive agreements designed to accomplish this very event.

Barclays moves to dismiss the First Amended Complaint (Doc. 36; the "Amended Complaint") on the same grounds it moved to dismiss the original complaint; specifically, that neither the Mortgage Loan Purchase Agreement ("MLPA") and Pooling and Service Agreement ("PSA") obligated Barclays to take any action to change the identity of the party entitled to draw on the letter of credit at issue in this action.  However, after spending time in its first Motion to Dismiss (Doc. 23) partially blaming co-Defendant Bank of America for the undisputed loss Plaintiff suffered in this action (*see, e.g.*, Doc. 23 at 1, 8), Barclays now blames *Plaintiff* for causing its own loss.

Specifically, Barclays claims that Plaintiff failed to draw on the letter of credit before it expired.  *See* Doc. 41 at 1.[1]  This allegation, as discussed *infra*, is unavailing under the plain language of the MLPA and PSA.  However, this argument also flies in the face of the allegations of the Amended Complaint (which the Court must accept as true and which are not disputed by either Defendant in their filings) and only serves to further point out why the pending motions to dismiss should be denied and this case should proceed to discovery.  Barclays is effectively alleging that Plaintiff should be held responsible for its failure to draw on a letter of credit Barclays admits Plaintiff *had no right to draw on* – because Barclays and Bank of America failed to take any action to provide Plaintiff with the right to draw on it – and had already been lost, without Plaintiff's knowledge, as a result of the failure of Barclays and Bank of America to take any action to notify Plaintiff of its impending termination in 2010.

While Barclays, at least at this stage of proceedings, may have stopped blaming Bank of America for the failure of the letter of credit to be properly assigned and transferred to the Trust, Barclays' pending motion to dismiss fails to exonerate it.  The MLPA (to which Barclays is a party) and PSA (to which Bank of America is a party) were, working together, intended to deliver the Letter of Credit to the trust in such a manner as to allow Plaintiff to draw on it when the time became appropriate – and neither Defendant disputes this did not occur.  As it happened, Bank of America – both the issuer of the Letter of Credit and the Master Servicer charged with protecting Plaintiff's interests – issued a notice to Barclays that the Letter of Credit would be terminated.  Neither Bank of America nor Barclays did anything to alert anyone or otherwise protect Plaintiff's collateral and the Letter of Credit expired.

---

[1] References to page numbers in the respective briefs filed by the parties in this action are, unless noted otherwise, to the page numbers provided by the parties.

Defendants were the only two parties that, by complying with their contractual obligations, could have prevented Plaintiff's loss; the Amended Complaint plainly states claims for relief against both of them.

## II.     FACTUAL BACKGROUND.

On or about April 19, 2006, Barclays made a loan to THI IV PBG LLC ("Borrower") in the original principal amount of $24,000,000.00 (the "Loan") pursuant to a Loan Agreement dated April 19, 2006, executed by Borrower in favor of Barclays (as assumed, amended, and/or modified from time to time, the "Loan Agreement").  Amended Complaint at ¶ 7.  The Note was secured by, among other things, that certain Irrevocable Standby Letter of Credit Number 3081678 in the amount of $1,250,000.00, dated April 20, 2006, and issued by Bank of America for the benefit of Barclays (the "Letter of Credit").  *Id*. at ¶ 9.

Barclays sold the Loan to Banc of America Commercial Mortgage Inc. ("BACM")[2] pursuant to that certain Mortgage Loan Purchase and Sale Agreement dated June 22, 2006 made by and between Barclays and BACM (the "MLPA").[3]  *Id*. at ¶ 11.  BACM subsequently transferred and assigned its right, title, and interest in the MLPA and the Loan to a securitized trust (of which Plaintiff is the current Trustee), pursuant to that certain Pooling and Service Agreement dated as of June 2, 2006 (the "PSA").  *Id*. at ¶¶ 11, 15.  Barclays represented that all of its rights and interest in any material collateral securing the Loan was assigned to BACM.  *Id*. at ¶ 16.

The MLPA contained several provisions requiring Barclays to convey, assign, and

---

[2] BACM was defined as the "Purchaser" under the MLPA and as the "Depositor" under the PSA.

[3] The MLPA is attached, in its entirety, as Exhibit A to the Second Declaration of Camille Oberkampf, Esq. (Doc. 40; "Oberkampf Decl.") submitted by Barclays.

transfer any and all of its interest in the Loan and any collateral securing the Loan – including the Letter of Credit.  *See, e.g.*, MLPA at § 2(a) (Declaration of Camille Oberkampf (Doc. 40; "Oberkampf Decl."), Ex. A., p. 2) (". . .[Barclays] will transfer, assign, set over, and otherwise convey to the Purchaser, without recourse, but subject to the terms and conditions of this Agreement, all the right, title, and interest of [Barclays] in and to the Mortgage Loans."). Section 2(c) contained specific delivery obligations for Barclays:

> [Barclays] shall deliver or cause to be delivered to the Purchaser, to the Trustee or a custodian designated by the Trustee . . . the documents, instruments and agreements required to be delivered to by [Barclays] to the Trustee under Section 2.01 of the [PSA], and meeting all the requirements of such Section 2.01, and such other documents and instruments as the Purchaser or the Trustee shall reasonably request.

MLPA at § 2(c) (Oberkampf Decl., Ex. A., p. 3).

Barclays made several representations and warranties in Section 4 of the MLPA. Pertinent to this case, Barclays made the representations and warranties in Schedule II to the MLPA.  *See* MLPA at 4(b) (Oberkampf Decl., Ex. A., p. 5).  In Schedule II, Barclays warranted that "[**a]ll** of [Barclays'] interest in **any material collateral** securing any Mortgage Lien **has been assigned to the Purchaser**."  MLPA at Sched. II, ¶ 43 (Oberkampf Decl., Ex. A., p. 37 of Doc. 40-1) (emphasis added).  In section 4(c) of the MLPA, Barclays pledged to cure any "Material Breach or Material Document Defect" upon being notified of the same and to notify the Purchaser (BACM) of any such breach or defect it discovered.  *Id*. at § 4(c) (Oberkampf Decl., Ex. A., p. 5).

The Letter of Credit was not properly assigned or transferred, and no action – at least based on the Defendants' submissions – was ever taken by Barclays to effect a change in the identity of the beneficiary of the Letter.  Amended Complaint at ¶¶ 26-28.  On February 11, 2010, Bank of America – both the issuer of the Letter of Credit and the Master Servicer of all

loans in the securitized trust – sent Barclays notice that the Letter of Credit would be terminated and, on May 1, 2010, terminated the Letter of Credit.  *Id.* at ¶¶ 31, 33-34.  Barclays took no action at that time to notify anyone of the pending termination of the Letter of Credit.  *Id.* at ¶ 33.

### III.    LEGAL STANDARD

**A.    Plaintiff need only allege facts to state a plausible claim for relief; Plaintiff clearly meets this burden.**

In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not provide detailed factual obligations, but must merely allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff's claim has factual plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

A court's task in ruling on a Rule 12(b)(6) motion is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Publ. Offering Secs. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotations omitted).  Thus, the fundamental issue at the dismissal stage "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), quoted in *Phelps v. Kapnolas*, 308 F.3d 180, 184-85 (2d Cir. 2002).  Plaintiff has alleged sufficient facts to support its breach of contract claim against Barclays.

**B.    Barclays' submission of materials outside the pleadings should not be considered by the Court; alternatively, this Court should convert Barclays' motion into a motion for summary judgment and allow Plaintiff an opportunity to conduct discovery and submit evidence in opposition to Barclays' pending motion.**

Barclays has submitted six exhibits, attached to the Oberkampf Declaration (Doc. 40;

5

"Oberkampf Declaration") in support of its motion to dismiss.  Exhibits A, B, and C to the Oberkampf Declaration are the MLPA, excerpts from the PSA, and the Letter of Credit, respectively.  Plaintiff agrees that these documents are "integral" to the Amended Complaint and can be considered by the Court in its consideration of Barclays' Motion to Dismiss.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

However, Exhibits D, E, and F to the Oberkampf Declaration (Docs. 40-4, 40-5, and 40-6, respectively) are qualitatively different.  These exhibits are as follows:

- Exhibit D (Doc. 40-4): the General Assignment Agreement ("the "GAA"), is an undated document, purportedly signed by Lori Ann Rung (the document is not notarized) on behalf of Barclays.  It indicates that Barclays is assigning several specific documents and a general assignment of certain documents related to the Loan; the GAA does not reference the Letter of Credit.  Further the GAA does not contain the identity of the party to whom Barclays made this assignment; the "assignee" blank is not filled in.

- Exhibit E (Doc. 40-5): an unsigned letter, dated April 25, 2006, purportedly from Joseph A. Strull, a paralegal at Winston & Strawn, to Ms. Lizzy Diaz-Ortiz, presumably a lawyer with LaSalle Bank, N.A.  Attached to this letter are (a) an unsigned acknowledgment from LaSalle Bank and (b) an unsigned "Barclays Capital Real Estate, Inc. Legal Document Delivery Checklist" for the loan for with the Letter of Credit served as partial collateral.[4]

- Exhibit F (Doc. 40-6): a September 20, 2006, "Form of Custodial Certification" letter from LaSalle Bank to several parties, including Barclays and Bank of America.

None of these three exhibits were attached to or referenced in the Complaint or Amended Complaint.

These documents are – contrary to Barclays' conclusory assertions (*see* Doc. 41 at fns. 2, 3) – neither integral to nor incorporated by reference in the Amended Complaint and should not be considered by the Court in evaluating Barclays Rule 12(b)(6) motion.  *Forsberg v. Always*

---

[4] All of these unsigned documents should be ignored by the Court.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 fn. 5 (2d Cir. 2002) (noting that courts generally decline to consider unsigned documents in ruling on motions to dismiss; citing )

*Consulting, Inc*. 2008 WL 5449003 *10 (S.D.N.Y. Dec. 31, 2008).[5]   Moreover, there is no evidence or allegation that Plaintiff relied on the terms and effects of these documents in drafting the Amended Complaint (in fact, it did not), as required for the Court to consider these documents in evaluating Barclays' motion under Rule 12(b)(6).  *See Chambers*, 282 F.3d at 153 ("[W]e reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." (italics in original)).[6]

Exhibit D, the General Assignment, is not referenced in or attached to either the MLPA or PSA; there is no evidence this document was ever delivered or that its general assignment (if it was, in fact, made out to the proper assignee) was broad enough to effect an assignment of the Letter of Credit.  Further, as noted *infra*, under the standards applicable to letters of credit and under the express terms of the Letter of Credit, this type of general assignment would be ineffective.   Exhibit E, the unsigned letter, acknowledgement, and checklist is even more problematic; if this document were ever signed or delivered, the checklist attached to it indicates delivery of the Letter of Credit but *specifically* indicates that an assignment of the Letter of Credit was _not_ delivered; this document, standing alone, creates a question of material fact as to whether Barclays assigned the Letter of Credit as it claims.  Whatever Exhibit F, the "Form of Custodial Certification," stands for, if anything, it does nothing to vary Barclays' obligations

---

[5] When considering a Rule 12(b)(6) motion to dismiss, "the Court may only consider the information contained in the four corners of a complaint, including 'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference,' or any other document that the complaint 'relies heavily upon ... render[ing] the document integral to the complaint.'  *Forsberg* at *10 (citing *Chambers*, 282 F.3d at 152–53).

[6] *Chambers'* holding that "mere notice or possession is not enough" conclusively rebuts Barclays' argument regarding the Court's consideration of Exhibits E and F to the Second Oberkampf Decl. (*see* Doc. 41 at fn. 3).

under the MLPA and PSA, which the Amended Complaint clearly and plausibly alleges Barclays failed to meet.

Each of these documents, if considered by the Court, raise fact questions that Plaintiff should be allowed to explore and test in discovery. *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (district court erred in dismissing complaint under Fed. R. Civ. P. 12(b)(6) when it relied on matter outside the pleadings without converting the motion to one for summary judgment and affording plaintiff opportunity to take discovery). If the Court is going to consider Exhibits D through F to the Oberkampf Declaration, it should convert the motion to one for summary judgment and allow Plaintiff an opportunity to present evidence of its choosing – and to conduct discovery. *Friedl v. City of New York*, 210 F. 3d 79, 83 (2d Cir. 2000) (when materials outside pleadings are submitted with Rule 12(b)(6) motion, court must either exclude additional materials or convert motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties opportunity to present supporting material); *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114-16 (2d Cir. 1999). *Cf. Chambers*, 282 F.3d at 152–53 (Rule 12(b)'s "conversion requirement is 'strictly enforced' whenever a district court considers extra-pleading material in ruling on a motion to dismiss.").

## IV.    ARGUMENT

The Amended Complaint asserts Barclays breached its contractual obligations under the MLPA in three distinct ways: (1) by failing and/or refusing to assign its beneficiary rights under the Letter of Credit as required under the MLPA and the PSA; (2) by failing or refusing to effect a change of beneficiary of the Letter of Credit; and (3) by failing to cure its Material Breach or Material Document Defect (as those terms are defined in the MLPA). *See* Amended Complaint at ¶¶ 48-50.

**A.    The MLPA obligated Barclays to take the steps necessary so that the Trustee became the beneficiary of and party entitled to draw the Letter of Credit.**

Barclays argues that the MLPA only required it to execute some sort of general assignment of the Letter of Credit and not, in the absence of a formal request, to prepare and deliver transfer papers to effect a change in the beneficiary of the Letter of Credit. *See, e.g.,* Doc. 41 at 4-5. This is incorrect; Barclays misconstrues the plain language of the MLPA and PSA[7] and ignores the clear intent of both documents, which – read together – was to deliver into the securitized trust mortgage loans and all attendant collateral without the sort of extra steps described by Barclays.

By its own terms, the MLPA was intended to effect "a sale by [Barclays] of **all** of [Barclays'] right, title, and interest in and to the Mortgage Loans." MLPA at § 18 (emphasis added) (Oberkampf Decl., Ex. A., p. 16). Unless and until Barclays assigned and transferred the Letter of Credit and took steps to ensure the Trustee could draw on the Letter of Credit, this purpose was frustrated. Indeed, following the sale of the Loan pursuant to the MLPA, Barclays remained the beneficiary of the Letter of Credit (and thus clearly retained an interest) – the only party that could have drawn the Letter of Credit or to whom the issuer, Bank of America, would have paid its proceeds.

It is an elementary proposition of New York contract law that "the court's duty in a case involving a contractual dispute is to determine the intent of the parties and to give effect to their intentions as expressed in their agreement." *Porky Prods., Inc. v. Nippon Express USA, Inc.*, 1 F.

---

[7] While Barclays points out that it was not a signatory to the PSA, it cannot claim to be a stranger to that document. The MLPA makes clear that the ultimate purpose of the MLPA is to transfer loans from Barclays to the Trust pursuant to the PSA and incorporates by reference many of the definitions contained in the PSA. *See* Oberkampf Decl., Ex. A., p. 1. Moreover, Barclays' document delivery obligations under the MLPA are derived from the PSA. *See id.* at § 2(c) (Oberkampf Decl., Ex. A., p. 3).

Supp. 2d 227, 230 (S.D.N.Y. 1997) (quoting *Record Club of America, Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, 1271 (2d Cir. 1989)).[8]   Indeed, the "fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Greenfield v. Phillies Records*, 98 N.Y.2d 562, 569 (N.Y. App. Div. 2002).   Accordingly, this Court must seek to ascertain the parties' overarching intent in the transaction, as expressed in the MLPA and PSA, in order to effectively interpret their contracts.

As stated above, the parties clearly intended that the Letter of Credit, and not merely the right to its proceeds, was to be transferred and assigned to the Trust.   Even where the MLPA uses the word "assign" without the word "transfer," it speaks of assigning the collateral (including the Letter of Credit), and not simply proceeds of the collateral.  *See, e.g.*, MLPA at Sched. II, ¶ 43.   Under New York law, courts are to interpret contracts according to the plain meaning of their terms.  *See, e.g., Citibank, N.A. v. Morgan Stanley & Co. International*, 724 F. Supp. 2d 398, 403-04 (S.D.N.Y. 2010); *see also World Trade Ctr. Props., LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003).   The "plain meaning" of the sentence "**[a]ll** of [Barclays'] interest in **any** material collateral securing any Mortgage Loan **has been assigned**" clearly indicates an intent to convey the collateral itself and not merely the right to receive proceeds from the collateral.

This clear intent is further manifested in Section 2 of the MLPA, where Barclays agreed, among other things, to: (1) "**transfer**, assign, set over, and otherwise convey to the Purchaser . . . **all** of the right, title and interest of [Barclays] in and to the Mortgage Loans"; (2) to deliver **all** of the "documents, instruments, and agreements" required by Section 2.01 of the PSA and "**meeting all the requirements of such Section 2.01**"; and (3) and to deliver the "Mortgage

_____

[8] Plaintiff agrees with Defendants that New York law applies to the parties' disputes.

File" to the loan purchaser. *See* MLPA at §§ 2(a), (c), (d) (emphasis added). Section 2.01(b) of

the PSA required Barclays to provide the documents necessary to change the beneficiary of the

Letter of Credit, if not take that action itself. That section provides that BACM was delivering to

the Trust all of its "right, title and interest . . . in, to and under (i) the Mortgage Loans[9] and all

documents included in the related Mortgage Files[10] . . . ." The section goes on to specifically

address what was required to meet the delivery requirements for letters of credit.

> [W]ith respect to each Mortgage Loan under which any Additional Collateral is in
> the form of a Letter of Credit as of the Closing Date, the Depositor hereby
> represents and warrants that it has contractually obligated the Mortgage Loan
> Sellers to cause to be prepared, executed and delivered to the issuer of each such
> Letter of Credit such notices, assignments and acknowledgments as are required
> under each such Letter to Credit to assign, without recourse, **to the Trustee the
> related Mortgage Loan Seller's rights as the beneficiary thereof and drawing
> party thereunder**; *provided* that the originals of such Letter of Credit shall be
> delivered to the Master Servicer.

PSA at § 2.01(b) (italics in original, emphasis added) (Oberkampf Decl., Ex. B., p. 87).

Thus, Section 2(c) of the MLPA incorporated Section 2.01(b) of the PSA to obligate

Barclays to cause to be delivered to the Trustee all Additional Collateral – including the Letter of

Credit. In order to deliver documents "meeting the requirements of Section 2.01 [of the PSA]"

(as required by Section 2(c) of the MLPA), Barclays *was required* to "cause to be prepared,

executed and delivered to [Bank of America] such notices, assignments and acknowledgements

---

[9] "Mortgage Loan" is defined in the PSA to mean "[e]ach of the mortgage loans transferred and
assigned to the Trustee . . . " and "the related Mortgage Note, Mortgage, and other security
documents contained in the Mortgage File." PSA at § 1.01, p. 50.

[10] "Mortgage File," as defined in the PSA, includes "(xi) any original documents (including any
security agreement(s)) relating to, evidencing or constituting Additional Collateral and, if
applicable, the originals or copies of any intervening assignments thereof." PSA at § 1.01, p. 49.
"Additional Collateral" is defined as "[a]ny non-real property collateral pledged and/or delivered
by or on behalf of the related Mortgagor and held by the related Mortgagee to secure payment on
any "Loan." *Id.* at § 1.01, p. 8. The Letter of Credit clearly fits the definition of Additional
Collateral in the PSA.

as are required under each such Letter to Credit to assign, without recourse, to the Trustee the related Mortgage Loan Seller's rights as the **beneficiary** thereof **and drawing party** thereunder." This provision – as made applicable by the MLPA – expressly required Barclays to take action to assign – or transfer – its rights as the beneficiary and drawing party thereunder.[11] It was Barclays' failure to do this – i.e., to deliver all of the documents required by, and that meet all of the requirements of, Section 2.01 – that caused Plaintiff's loss.

In order to "**transfer**, assign, set over, and otherwise convey" to the Purchaser/Depositor all of the "**right, title and interest**" in the Letter of Credit, Barclays *had* to take action to transfer the Letter of Credit. In the absence of such action, it retained title to or an interest in the Letter of Credit – specifically, as the designated beneficiary of the Letter of Credit and party entitled to draw upon the Letter of Credit – in contradiction to the requirements of Section 2.01 of the PSA, as made applicable by Section 2(c) of the MLPA.

**B.    Barclays' narrow reading of "transfer" and "assign" conflicts with the clear intent of the MLPA and PSA; in any event Barclays never transferred or assigned the Letter of Credit.**

Barclays attempts to avoid liability by arguing that the use of the word "assign" in the MLPA, as opposed to the word "transfer," exculpates it from any potential liability to Plaintiff. This argument might be relevant to a dispute regarding the identity of a party attempting to draw on a letter of credit, but is not relevant here.

Barclays' argument that its only obligation was to *assign* (the proceeds of) the Letter of

---

[11] Barclays argues that the failure to use the word "transfer," in this provision, among others, bars a finding of liability. If Barclays is correct, then the language in Section 2.01 is self-defeating because beneficiary status and rights to draw could not be assigned. A more reasonable interpretation of this language is that it means what it says: Barclays was obligated to take such actions as were necessary so as to transfer Barclays' beneficiary and draw rights under the Letter of Credit to the Trust.

12

Credit, and not to *transfer* the Letter of Credit (*see* Doc. 40 at 5), runs counter to the whole integrated scheme of the MLPA and PSA, which sought to achieve a single goal: assignment and transfer of all of the mortgage loans and their collateral into the securitized trust. Barclays undertook in the MLPA to "**transfer**, assign, set over, and otherwise convey to the Purchaser . . . all of the right, title and interest of [Barclays] in and to the Mortgage Loans." MLPA at § 2(a) (emphasis added) (Oberkampf Decl., Ex. A., p. 2). With respect to the Letter of Credit, it failed to do this – it retained its rights as the beneficiary and party entitled to draw on the Letter of Credit.

Barclays is also wrong to focus this particular argument on Paragraph 43 of Schedule II to the MLPA. In that provision, Barclays warranted that "[a]ll of [Barclays'] interest in any material collateral securing any Mortgage Loan has been assigned to [BACM]." MLPA at Schedule II, ¶ 43. This provision is intentionally broad and was clearly meant to ensure that full ownership of all of the collateral was assigned and transferred to BACM (and ultimately to the Trust), including the Letter of Credit. The Complaint clearly alleges Barclays' breached this provision because it never transferred its interest as the beneficiary of the Letter of Credit and, as discussed below, never assigned the Letter of Credit, even under its narrow definitions of those terms.

Assuming for the sake of argument that Barclays correctly construes the MLPA regarding its duties to convey collateral, Barclays still failed to adhere to the terms of the MLPA. Specifically, even if the MLPA only required Barclays to assign the proceeds of the Letter of Credit to the Trust, it failed to effect such an "assignment" under the standards governing the Letter of Credit or New York law.

13

Barclays relies heavily on *MSF Holding Ltd. v. Fidcuiary Trust Company International*, in which the Court held that a purported assignment of a letter of credit is ineffective under New York law until the letter of credit is delivered to the assignee.  435 F. Supp. 2d 285, 298-99 (S.D.N.Y. 2006).   In reaching its conclusion, the court noted that "[c]ourts faced with the application of the UCP and New York law have consistently held that, because the UCP is silent on when and how an assignment of proceeds is made, the more detailed terms of New York's [Uniform Commercial Code] shall apply."   *Id.* (citing *Weyerhauser Co. v. Isr. Disc. Bank of N.Y.*, 895 F.Supp. 636, 645 (S.D.N.Y. 1995)); *see also Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.*, 748 F. Supp. 177, 183 (S.D.N.Y. 1990)).   Current section 5-114 of New York's UCC provides that an "issuer or nominated person need not recognize an assignment of proceeds of a letter of credit until it consents to the assignment," and that the issuer has no obligation to consent to the assignment unless the assignee possesses the original letter of credit.  N.Y. U.C.C. Law § 5-114(c), (d).   *See also* N.Y. S.B.A. Comm. Rep. to § 5-114 ("Revised 5-114(c) *requires* the consent of the issuer or nominated person before the issuer or nominated person is required to recognize an assignment of proceeds.").   There is no allegation Barclays took any steps to notify the issuer of the Letter of Credit of its assignment, and the Amended Complaint specifically alleges that Barclays did not assign the Letter of Credit. The evidence submitted by Barclays on this point (which the Court should either ignore or allow Plaintiff to respond, *see supra* at § III.B.) does not establish an assignment was actually made.

Moreover, the *MSF Holding* court only applied New York state law to the facts of that case because the UCP[12] did not provide clear instruction as to the mechanics of an assignment

---

[12] The International Chamber of Commerce's Uniform Customs and Practice for Documentary Credits (1993), Publication No. 500.

and no instruction on when an assignment vested.  *See MSF Holding*, 435 F. Supp at 298-99.
Because of UCP's lack of detail on the crucial issue in that case, application of New York law
was necessary to fill in the gap.  *Id*. at 299.

That gap-filling is unnecessary in this case.  The International Standby Practices 1998,
ICC Publication No. 590 ("ISP 98"),[13] and not the UCP, governs the Letter of Credit (*see* Ex. C
to Oberkampf Decl. (Doc. 40-3) at 2), and provides detailed and stringent standards for
assignments of letters of credit.  ISP Rules 6.07 and 6.08 provide that an assignment is not
binding (i.e. valid) on the issuer unless the issuer acknowledges the assignment (which it is not
obligated to do) and that the issuer can impose a host of conditions on its acknowledgment of the
assignment.  ISP Rule 6.07 makes clear that, even if an assignment is acknowledged, "the
acknowledgement confers no rights with respect to the standby [letter of credit] to the assignee . .
. ."  In other words, assuming Barclays is correct, the Trust would have received a Letter of
Credit it could not draw upon.

While Barclays claims that its "General Assignment" (Exhibit D to the Second
Oberkampf Decl. (Doc. 24)) assigned the Letter of Credit, the Letter of Credit is not specifically
described in the General Assignment (many of the other specific loan documents being assigned
are so described and listed).[14]  Moreover, it is not clear the General Assignment was ever
correctly filled out with the proper assignee and there is no reliable evidence Barclays actually

---

[13] A true and correct copy of ISP 98 is attached to the Declaration of W. Patton Hahn as **Exhibit A**.

[14] Whether Barclays delivered the Letter of Credit in compliance with its obligations under the MLPA is just the type of question of fact upon which Plaintiff should be allowed to seek discovery.

delivered the Letter of Credit to either BACM or the Trust.[15]   Barclays thus failed to even properly "assign" the Letter of Credit under its own narrow definition of that term.   Accordingly, even if Barclays' incorrect characterization of its obligations under the MLPA is taken as true, it still failed to fulfill its contractual obligation to assign the Letter of Credit to the Trust, as alleged in the Amended Complaint.  *See, e.g.,* Amended Complaint at ¶¶ 26-27, 33, 36.

> **C.   Barclays' hypothetical draw on the Letter of Credit only underscores why its motion to dismiss should be denied.**

Barclays hypothetically describes what it believes should have happened if the Letter of Credit had been drawn against (*see* Doc. 41 at 7-8) and states that "ostensibly" Bank of America would have honored the draft.

As to the first scenario, Bank of America would have been under no obligation to honor a draft made by a party other than Barclays.  Under ISP 98, only drafts from beneficiaries need be honored.  *See* ISP 98 at § 1.09(a) ("'Beneficiary' is a named person entitled to draw under a standby.").  Barclays was the beneficiary of the Letter of Credit.

As to the second hypothetical, actual events render it irrelevant.  Plaintiff never had an opportunity to draw against the Letter of Credit (or seek reinstatement or replacement of the Letter of Credit) because it was terminated without Plaintiff's knowledge – as Barclays was aware, since it received notice of the termination, but did nothing to alert Plaintiff (or anyone else).  *See* Amended Complaint at ¶¶ 31, 33-34, 36.

> **D.   Barclays' failure to assign and transfer the Letter of Credit constituted a Material Document Defect or Material Breach that Plaintiff alleges Barclays was aware of and failed to take any action on.**

---

[15] Whether Barclays delivered the Letter of Credit in compliance with its obligations under the MLPA is just the type of question of fact upon which Plaintiff should be allowed to seek discovery.

Barclays' failure to take action to change the beneficiary of the Letter of Credit or otherwise transfer or assign the Letter of Credit constituted a Material Document Defect or Material Default under the MLPA.  The PSA defines a Material Document Defect[16] as a "Document Defect that materially and adversely affects the interest of the Certificateholders . . . with respect to the affected Mortgage Loan, including but not limited to a material and adverse effect on any of the distributions payable with respect to any of the Certificate Holders."  PSA at § 1.01 (Oberkampf Decl., Ex. B., p. 45-46).[17]   A "Document Defect" is defined as "any document required to be part of the related Mortgage File that has not been properly executed, [or] is missing. . . ."[18] *Id.*

Upon discovering that a Material Document Defect existed, which occurred at the latest by February 21, 2010, *see* Amended Complaint at ¶ 31, Barclays was obligated to notify the Purchaser under the MLPA (or, more specifically, the Master Servicer of the Trust, which has succeeded to all of the Purchaser's right, title, and interest in the MLPA (*see* PSA at § 2.01(b)). Barclays took no action, and ultimately the Letter of Credit was terminated.  *See* Amended Complaint at ¶¶ 33-34.

> **E.    Section 3.02(b)(ii) of the PSA does not support Barclays' argument or otherwise relieve it of its obligations with respect to transfer and assignment of the Letter of Credit.**

Barclays' reliance on Section 3.02(b)(ii) of the PSA, *see* Doc. 41 at 12, is misplaced. That section obligated Bank of America, as Master Servicer, to contact the issuers of letters of

---

[16] Defined terms used but not defined in the MLPA have the meanings ascribed to them in the PSA.  *See* MLPA at p. 1.

[17] The definition of Material Breach is substantially similar, although somewhat broader.  *See* PSA at § 1.01, p. 45.

[18] As noted *supra* at fn. 10, the Letter of Credit should have been part of the Mortgage File.

credit (in this case, to contact itself (however that may have occurred)), and notify them that the beneficiary of the letter of credit needed to be changed to the Master Servicer or Special Servicer on behalf of the Trustee.

First, nothing in this provision obviates or lessens *Barclays'* obligation to cause the Trustee to be named as the beneficiary of the Letter of Credit. *See supra*; *see also* MLPA at § 2(c), PSA at § 2.01(b) (Oberkampf Decl., Ex. A, p. 3; Ex. B, p. 87). PSA Section 3.02(b)(ii) only makes sense *after* that event has taken place; the Master Servicer or Special Servicer can then notify the issuer that, as agent of the Trustee, it needs to be named the beneficiary of the Letter of Credit. Section 3.02(b)(ii) has no practical effect *before* Barclays has taken action to name the Trustee as the beneficiary; in that case, the Master Servicer's notice to the issuer of the Letter of Credit will be rejected because, at that point, Barclays is the only party entitled to transfer the Letter of Credit.

Further, under ISP 98, the "beneficiary" is the party entitled to draw on the letter of credit and the only party entitled to transfer a letter of credit. ISP 98 at §§ 1.09(a) (definition of beneficiary); 1.11(c)(ii) ("beneficiary" includes transfer beneficiary); 6.03(b) (transfer request must be made by beneficiary). *See also* Ex. C to Oberkampf Decl. (issuer's transfer of Letter of Credit subject to receipt of beneficiary's [i.e., Barclays'] instructions to transfer). Thus, Section 3.02(b)(ii) contains instructions that are only effective after an original beneficiary, Barclays in this case, has already transferred its interest in a letter of credit.

F.     **The Amended Complaint clearly and plausibly alleges that Barclays caused Plaintiff's damages.**

The Amended Complaint clearly alleges that, as a result of Barclays' and Bank of America's breach of their obligations, the Letter of Credit was terminated without Plaintiff's knowledge, and thereby lost to the Trust. Amended Complaint at ¶¶ 33, 35, 48-52. The

18

underlying Loan went into default, and the Letter of Credit was lost and not available to draw due to circumstances only Barclays and Bank of America had an opportunity to act upon. Plaintiff has clearly alleged damages sufficient to survive a motion to dismiss. *See Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc*., 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004) (holding that, at the motion to dismiss stage of litigation, a plaintiff "need only allege that it was damaged; it is not required to specify the measure of damages nor plead proof of causation"); *see also In re IPO Securities Litig*., 241 F. Supp. 2d 281, 351 n. 80 (S.D.N.Y. 2003) (holding that, while plaintiff "may not be able to prove damages, that is not an appropriate question at [the motion to dismiss] stage") (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

## V.     CONCLUSION.

Plaintiff's Amended Complaint clearly alleges facts stating a claim for breach of contract against Barclays for failing to transfer and assign the Letter of Credit.  The PSA and MLPA, working in tandem, were clearly intended to transfer all of the loans, documentation, and collateral (including the Letter of Credit) securing the loans from Barclays, the originator of the Loan, to the Trust.  As regards the Letter of Credit, it was Barclay's obligation to cause the transfer and assignment of the Letter of Credit.  This was as it should be – Barclays was the only party with an independent ability to cause a change in the beneficiary of the Letter of Credit or that could direct a change in the party entitled to draw on the Letter of Credit.  Barclay's motion to dismiss should be denied.

However, if the Court grants Barclay's Motion to Dismiss, the Plaintiff hereby requests leave to amend its complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] where justice so

requires").  *See also Ronani v. Sanofi, S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (granting plaintiff

leave to amend its amended complaint and noting "[w]hen a motion to dismiss is granted, the

usual practice is to grant leave to amend the complaint").

*/s/ W. Patton Hahn*
MAX A. MOSELEY
TIMOTHY M. LUPINACCI, *pro hac vice*
W. PATTON HAHN, *pro hac vice*
MARIANNE H. COMBS, *pro hac vice*
Attorneys for Plaintiff

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
420 20th Street North, Suite 1400
Birmingham, Alabama  35203
Telephone:     (205) 328-0480
Facsimile:     (205) 322-8007

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2012, a copy of the foregoing has been served on the following by the Court's electronic filing system or via the means otherwise set forth below.

Mr. Richard Sauber (*via electronic mail*)
Ms. Jennifer Windom
*Counsel for Bank of America, N.A.*
Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006

Mr. Jonathan Shaw (*via electronic mail*)
Ms. Camille Oberkampf
*Counsel for Barclays Capital Real Estate, Inc.*
Jonathan M. Shaw
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave. N.W.
Washington, DC 20015

*/s/ W. Patton Hahn*
OF COUNSEL